IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DARIUS T. WILLIAMS, | ) | |
| | ) | No. 16 CV 11335 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Michael T. Mason |
| NANCY A. BERRYHILL[1], Acting | ) | |
| Commissioner of the U.S. Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

Plaintiff Darius Williams ("Claimant") filed a motion for summary judgment seeking reversal of the final decision of the Commissioner of Social Security ("Commissioner"), denying his claim for disability benefits. The Commissioner has filed a cross-motion asking the Court to uphold the decision of the Administrative Law Judge ("ALJ"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g) and 138(c)(3). For the reasons set forth below, Claimant's motion for summary judgment [18] is denied, and the Commissioner's motion for summary judgment [22] is granted.

## I. Background

### A. Procedural History

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

Claimant was eligible for Supplemental Security Income ("SSI") benefits as a child for the period preceding his 18th birthday, which occurred on August 22, 2011. (R. 23.) Claimant was found to be no longer disabled as of January 1, 2012 after a determination of disability as an adult. (*Id*.) The ALJ dismissed a request for a hearing when Claimant failed to appear in December of 2014. (R. 118-19.) The Appeals Council issued an order vacating the ALJ's dismissal and remanding the case for further proceedings on July 21, 2014. (R. 121.) The ALJ held another hearing on January 12, 2015 to determine whether Claimant's reason for missing his previous hearing constituted good cause. (R. 21.) After determining Claimant had good reason for missing the hearing, the ALJ held a new hearing on May 6, 2015. (*Id*.) On May 29, 2015, the ALJ issued a written decision finding that Claimant was not disabled. (R. 21-32.) On October 14, 2016, Claimant's request for review by the Appeals Council was denied, making the ALJ's decision the final decision of the Commissioner. (R. 1-6.) This action followed.

**B. Medical Evidence**

    **1. Consultative Examiners**

Dr. Robert V. Prescott, examined Claimant on October 11, 2011. (R. 476). Claimant was 18 years old at the time and appeared "somewhat anxious". (*Id.*) Per Claimant's report, Claimant can dress and bathe himself, take out the trash, and use the microwave. (R. 477.) Claimant knew the month and year but could not state the date. (*Id*.) Dr. Prescott also noted that Claimant's speech was difficult to understand and could only be understood about 60-70% of the time. (*Id.*) Dr. Prescott opined that Claimant only understood his questions 70-80% of the time. (R. 478.)

Dr. Prescott administered the Wechsler Adult Intelligence Scale, which put Claimant in the first percentile with a full scale IQ of 64. (*Id.*) His verbal comprehension was in the first percentile, perceptual reasoning in the second percentile, working memory in the second percentile, and processing speed in the fifth percentile. (*Id.*) Ultimately, Dr. Prescott gave him the Axis I diagnoses of learning disability, NOS and phonological disorder, and an Axis II diagnoses of borderline intellectual functioning. (R. 480.)

Dr. Prescott examined Claimant again in March of 2015, when Claimant was 21 years old. (R. 517.) Dr. Prescott noted that Claimant had a full scale IQ of 59, verbal IQ of 63, and performance IQ of 62. (*Id.*) Dr. Prescott also noted a phonological disorder. (*Id.*) Dr. Prescott gave him the same diagnoses as his October 2011 assessment. (R. 522.)

Dr. Prescott completed a Mental RFC form, and opined that Claimant would have mild limitations in the ability to understand and remember simple instructions and to carry out simple instructions. (R. 523.) He opined that Claimant would have moderate limitations in the ability to make judgments on simple work-related decisions. (*Id.*) He further opined that Claimant would have marked limitations in the ability to understand and remember complex instructions, to carry out complex instructions, and to make judgments on complex work-related decisions. (*Id.*) He also found that Claimant had moderate limitations in the ability to interact appropriately with the public, supervisors, and co-workers, as well as moderate limitations in the ability to respond appropriately to usual work situations and changes in a routine work setting. (*Id.*)

**2. School Records**

In 2011, Claimant had an Individual Education Program ("IEP") in twelfth grade. (R. 445.) His IEP indicated that he needed "a lot of teacher contact" to stay focused. (R. 447.) He was in special education for his core subjects. (*Id.*) His team noted that he was incapable of living independently, taking care of his health, eating, hygiene, medical needs, homemaking, money, and using community services. (*Id.*) Claimant tried a Collaborative Team Teaching[2] ("CTT") class in 2009-2010, but he was removed from the class because "he didn't have a clue what was going on and … he wouldn't have a chance of passing." (R. 448.)

Claimant was given multiple accommodations and classroom modifications, including the following: give verbal directions in clearly stated steps; ask student yes/no questions; ask student to summarize information to check for understanding; offer choices for responses; embed choices when eliciting information; extend time on task for completion of class and homework assignments by ten percent; explain directions and give concrete examples; test one concept at a time; ask student to repeat directions back to confirm understanding; provide visual cues and guides; provide motivation and verbal rewards on a daily basis; and a reduced work load. (R 451.) Claimant's teachers noted that he interacted with teacher and students appropriately. (R 454.) However, his teachers also noted that he read and wrote at a fourth grade level, had low energy, poor memory, lost focus, and preferred to sit alone. (R. 456.) His special education teacher also stated he did not have the skills to live independently, and that

---

[2] A CCT classroom is one in which "a general educator and a special educator … delivers special education services in the general education classroom. They have the joint responsibility to design, deliver, monitor and evaluate instruction for a diverse group of learners in classes where both are present and engaged simultaneously." http://www.ufttc.org/wp-content/uploads/2013/09/Centering_on_CTT_2010.pdf (last viewed on September 7, 2018).

he had low ability in reading, math, spelling, writing, learning, and social skills, requiring modifications and accommodations to access the general education curriculum. (R. 458.)

**C. Claimant's Testimony**

Claimant appeared at the hearing on May 6, 2015, unrepresented and accompanied by his aunt. (R. 73.) Claimant testified that he lives with his aunt and uncle, along with three of their grandsons. (R. 77.) He testified that he tried trade school and has applied for jobs, but he has not heard back from any of the applications. (R. 79-80.) He also stated that he does not have a driver's license and was in special education part time in school. (R. 81.) He stated he could use a microwave, and that he tried to help out around the house. (R. 82.) He took public transportation to high school, and he goes to church with his aunt. (R. 86.) He testified that he does not shop much, but he can shop a little bit for himself. (R. 86-87.) He stated that he does not hang out with friends or his cousins. (R. 88.) Claimant also reported that he likes to read his Bible, and that he enjoys watching the history channel. (R. 96.)

**D. Witness Testimony**

Claimant's aunt testified that Claimant wants to work, but his lack of communication skills have cost him a job in the past. (R. 90.) She reiterated that he is incapable of living on his own, and that he relies on her when he's out in public. (R. 91.) She also testified that he can only follow one direction at a time. (R. 93.)

**E. Medical Expert Testimony**

Medical Expert ("ME") Dr. Ellen Rozenfeld, a licensed clinical psychologist, also testified at the hearing. (97.) Dr. Rozenfeld noted that Claimant's IQ of 64 falls into the

5

intellectual disability range, but that he was only diagnosed with borderline intellectual functioning. (R. 100.) She testified that Claimant received Special Education, and his IEP stated that he had a mild cognitive impairment and a speech and language impairment. (R. 101.) She noted that he is capable of completing chores, using a microwave, and can complete self-care independently. (R. 102.) She stated that he does not have the cognitive skills or financial resources to live independently, but he can function with adequate autonomy. (*Id.*) Dr. Rozenfeld found that his depression did not seem to be a severe impairment, and that it did not impact his functioning in a school setting. (R. 103.) When asked about Claimant's abilities with regards to a work place, Dr. Rozenfeld stated that he would be limited to tasks of a simple routine nature and could handle one and two step tasks. (*Id.*) Due to his phonological impairment, he should be in a position that required sustained general public contact. (R. 104.)

### F. Vocational Expert Testimony

Vocational Expert ("VE") Kari Seaver also appeared at the hearing. The ALJ asked the VE to consider someone of Claimant's age, education, and work history who could perform work at all exertional levels, but would be limited to simple, routine, repetitive tasks, one to two-step tasks, with particularly relaxed or flexible production rate requirements and no sustained verbal contact with the public. (R. 106.) The VE stated that such an individual could perform work as a hand packer, assembler, and a sorter. (*Id.*) The VE testified that the individual would need to be on task at least 85% of the workday, and that the jobs are bench jobs with quotas, but no conveyor line or assembly line. (R. 106-07.)

## II. Analysis

**A. Standard of Review**

This Court will affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is more than a scintilla of evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). We must consider the entire administrative record, but will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). This Court will "conduct a critical review of the evidence" and will not let the Commissioner's decision stand "if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539 (quoting *Steele*, 290 F.3d at 940).

In addition, while the ALJ "is not required to address every piece of evidence," he "must build an accurate and logical bridge from evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must "sufficiently articulate [his] assessment of the evidence to assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (per curiam) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)).

**B. Analysis under the Social Security Act**

In order to qualify for SSI or DIB, a claimant must be "disabled" under the Social Security Act (the "Act"). A person is disabled under the Act if "he or she has an inability

to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).  In determining whether a claimant is disabled, the ALJ must consider the following five-step inquiry: "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he can perform past relevant work, and (5) whether the claimant is capable of performing any work in the national economy."  *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  The claimant has the burden of establishing disability at steps one through four.  *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).  If the claimant reaches step five, the burden then shifts to the Commissioner to show that "the claimant is capable of performing work in the national economy."  *Id.* at 886.

Here the ALJ applied the five-step process to reach his decision denying Claimant's application for benefits.  At step one, the ALJ determined that Claimant attained age 18 on August 22, 2011 and was eligible for supplemental security income benefits as a child for the month preceding the month in which he attained age 18.  (R. 23.)  He was found no longer disabled as of January 1, 2012 based on a redetermination of disability under the rules for adults who file new applications.  (*Id.*)  At step two, the ALJ determined that Claimant had the severe impairments of a learning disability, NOS, and a depressive disorder.  (*Id.*)  The ALJ found that the evidence does not support the presence of the medically determinable impairment of intellectual disability.  (R. 24.)  At step three, the ALJ concluded that Claimant does not have an

impairment or combination of impairments that meets or medically equals the severity of one of the Commissioner's listed impairments. (*Id*.)

The ALJ went on to assess Claimant's RFC, finding Claimant had the residual functional capacity to perform a full range of work at all exertional levels, but with the following limitations: Claimant would be limited to work consisting of simple, routine, and repetitive, one to two step tasks, in a low stress job, defined as having relaxed or flexible production requirements. (R. 25.) Claimant would be unable to tolerate sustained verbal contact with the public. (*Id.*) At step four, the ALJ determined that Claimant has no past relevant work. (R. 31.) Finally, the ALJ found that there were jobs that existed in significant numbers in the national economy that Claimant could perform, such as hand packer, assembler, and sorter. (R. 32)

Claimant now argues that the ALJ's decision is not supported by substantial evidence and requires remand. Claimant argues that the ALJ erred in failing to develop a full and fair record after failing to obtain a valid waiver of his right to representation, that the ALJ erred in evaluating Claimant's impairments in light of the listings, that the ALJ erred at step five by failing to adequately account for Claimant's limitations, and that the ALJ failed to fully develop the record by failing to discuss certain limitations with the ME or in the hypotheticals to the VE. We address Claimant's argument below, ultimately finding that the ALJ's opinion should be affirmed.

**C. The ALJ Obtained a Valid Waiver of Representation from Claimant.**

Claimant contends that the ALJ failed to obtain a valid waiver of representation at the second hearing. In response, the Commissioner argues that the ALJ obtained a valid waiver of representation at the initial hearing, and he confirmed with Claimant that

Claimant was informed of his right to representation and wished to proceed unrepresented. The Court agrees with the defendant.

A Social Security claimant has a "statutory right to counsel at disability hearings." *Thompson v. Sullivan,* 933 F.2d 581, 584 (7th Cir. 1991). But a claimant may validly waive that right so long as he is given "sufficient information to enable him to intelligently decide whether to retain counsel of proceed *pro se.*" Id. (quoting *Hawwat v. Heckler,* 608 F.Supp. 106, 108 (N.D. Ill. 1984). Such information includes (1) an explanation of the manner in which an attorney can aid in the proceedings; (2) the possibility of free counsel or a contingency arrangement; and (3) the limitations on attorneys' fees to twenty-five percent of past due benefits. *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994).

Here, Claimant was notified of his rights via a written document titled "Your Right to Representation," which he received along with his notice of hearing. (R. 234-41.) Moreover, the ALJ fully explained Claimant's right to representation at the initial hearing. (R. 51-53.) The ALJ also informed Claimant that if he did not have representation at the next hearing, the ALJ would proceed with the hearing. (*Id.*) Claimant confirmed at the second hearing that the ALJ informed him of his rights at the prior hearing, and then he signed a waiver of representation at the hearing. (R. 251.) This Court has previously held that a signed acknowledgement of receipt along with a concession by Claimant that he received the information constitutes a valid waiver of representation. *Peters v. Berryhill*, 2018 U.S. Dist. LEXIS 62013 at *17, (N.D. Ill. 2018). Moreover, unlike in *Peters*, Claimant was fully informed of his right to representation at the earlier hearing. (R. 51-53.) Claimant was fully informed of his right to representation, compliant with

*Binion*, for his other hearing. (R. 234-41.) He then received a document regarding his right to representation along with the hearing notice, and he signed an acknowledgement of being informed of his right to representation, waiving that right. (R. 251.) Therefore, we find that Claimant was fully informed of his right, and the ALJ obtained a valid waiver of representation.

This conclusion does not change the fact that when a claimant is unrepresented, the ALJ has a duty to develop the record "fully and fairly." *Binion*, 13 F.3d at 245 (noting that "the ALJ has the same duty to develop the record when a plaintiff is without counsel regardless of whether the plaintiff's waiver of counsel was valid"). That duty is met if "the ALJ probes the claimant for possible disabilities and uncovers all of the relevant evidence." *Id.* Where, as here, a claimant has waived his right to representation, "the burden is on the claimant to show that the ALJ failed this duty." *Juza v. Berryhill*, No. 17 CV 439, 2018 U.S. Dist. LEXIS 27597, at *5 (E.D. Wis. Feb. 21, 2018). As explained in more details below, Claimant does not meet his burden to establish that the ALJ failed this duty.

## D. The ALJ Properly Determined that Claimant's Impairments Were Not of Listing Level Severity.

### 1. Listing 12.05

Claimant asserts that the ALJ failed to discuss Listing 12.05 in analyzing Claimant's impairments. The Commissioner responds by noting that the ME specifically testified that Claimant's impairments should be analyzed under 12.02 and not 12.05 due to his diagnosis of borderline intellectual functioning and his adequate autonomy. An IQ score of 64 "is not sufficient to meet Listing 12.05." *Anderson v. Barnhart*, 175 Fed. Appx. 749, 753 (7th Cir. 2006). Claimant must also show that he suffered from a

physical or mental impairment that imposed "an additional and significant work-related limitation or function." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(C). The ALJ gave great weight to the opinion of the ME, who testified that Claimant was diagnosed with borderline intellectual functioning, which fell under 12.02 and not 12.05. (R. 102.) Moreover, she testified that although Claimant had adaptive deficits, Claimant retained adequate autonomy to function. (*Id.*) She further opined that Plaintiff's impairments did not meet or equal the listings. (*Id.*)

Although the ALJ did not discuss 12.05 in his written decision, he stated that he relied on the opinion of the ME, who specifically discussed how Claimant did not qualify for Listing 12.05 due to his diagnoses and functioning level. (*Id.*) Further, the ALJ discussed how the evidence does not support the presence of an intellectual disability, which would fall under Listing 12.05. (R. 24.) Dr. Rozenfeld noted that although Claimant underwent two psychological exams, he had never been diagnosed with an intellectual disability. (*Id.*) Dr. Rozenfeld also pointed to Claimant's ability to cook simple meals in a microwave, perform simple household chores, maintain his self-care, and travel independently as evidence that Claimant's adaptive functioning is inconsistent with an intellectual disability. (*Id.*)

Claimant does not point to any physical or mental impairment that imposed an additional and significant work-related limitation or function. "[Claimant has] the burden of establishing that he met all of the requirements of a listed impairment." *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). Claimant, instead, cites to his learning disability, phonological disorder, and depressive disorder without showing how those impairments imposed an additional and significant work-related limitation or function.

Claimant did not meet his burden of showing how his diagnoses and impairments caused addition limitations. Accordingly, the ALJ properly eliminated 12.05, and Claimant failed to satisfy his burden and provide evidence in support of Listing 12.05.

### 2. Listings 12.02 and 12.04

Claimant also argues that the ALJ erred in evaluating Claimant's impairments under Listings 12.02 and 12.04. Specifically, Claimant argues that his symptoms were attenuated by psychosocial support, and he was incapable of living independently. Claimant focuses on Listing 12.00, which states that the ALJ must consider the Claimant's ability to function outside of highly structured settings if Claimant's symptomatology is controlled or attenuated by psychosocial factors. C.F.R. Section Pt. 404 Subpt. P, Listing 12.00. Claimant mistakenly argues that if he cannot live independently, then he also cannot work full time. However, the C.F.R. also states that the "ability to function outside of such a structured or supportive setting may not have changed." *Id.* Claimant does not point to any evidence that shows he cannot function outside of the home. Instead, he points to evidence that shows he cannot live independently, but none that corroborates the argument that he cannot function outside of a structured setting. Claimant argues that he cannot pay bills or count change on his own, but evidence shows that he is capable of asking for assistance when dealing with money. (R. 292, 314.) He also states that he needs reminders to brush his teeth and take medication, and he needs assistance in matching clothing and preparing food. (R. 290-91, 313.) However, he does not argue that he cannot function in a work place environment outside of the home.

The ALJ provides a full discussion of the evidence, analyzing the state agency medical consultant opinions, Claimant's IEP notes, the consultative examiner's opinion, and the ME's opinion to find that Claimant had adequate skills to function in a work place environment outside of his structured home setting. (R. 24-30.) The ALJ points to the fact that Claimant attended school, maintained self-care, took the bus to school independently, assisted with chores, and attended church regularly. (R. 24.) The ALJ found that although Claimant did have limitations in social functioning, they were only moderate limitations. (*Id.*) The ALJ also found that Claimant had no restrictions in activities of daily living, as Claimant was able to use a microwave, maintain self-care independently, take the bus to school five days a week, and help his aunt and uncle with chores around the house. (*Id.*) Moreover, the ME opined that Claimant could function with adequate autonomy. (R. 102.) The ALJ also noted that multiple doctors found that Claimant did not satisfy either the "B" or "C" criteria of the mental impairment listings. (R. 491-92, 509-10.) Thus, the ALJ's discussion of the Listings is corroborated by substantial evidence.

Claimant points to a case from the Northern District of Indiana to corroborate his argument. However, that case is not binding on this Court. The case is not persuasive, either, as the facts of the case do not bear any similarity to the case at hand. In *Herron v. Comm's of Soc. Sec.,* 788 F. Supp. 2d 809 (N.D. Ind. 2011), the claimant was found to cause severe damage to family vehicles by setting them on fire (without knowing he had done so), was incapable of performing even simple household duties, and his ex-wife testified that she had to treat him like a child. *Herron,* 788 F. Supp. 2d at 816. Claimant suffers from no such extreme limitations. Therefore, we find that the ALJ

properly discussed Listings 12.02 and 12.04 in light of Claimant's psychosocial support and found that Claimant did not meet or exceed either Listing.

## E.  The ALJ's Step Five Evaluation is Proper and Supported by Substantial Evidence.

### 1.  The ALJ Properly Identified Occupations that Claimant Could Perform by Obtaining Vocational Expert Testimony.

Claimant takes issue with the ALJ's step five determination, where he found that an individual with Claimant's nonexertional limitations could perform jobs as a hand packer, assembler, or sorter.  Claimant contends that the Department of Labor's *Dictionary of Occupational Titles* ("DOT") list both hand packer and sorter jobs as requiring a reasoning level two, and that Claimant's RFC limits him to a reasoning level one job.  The ALJ's RFC determination limited Claimant to work consisting of simple, routine, and repetitive one to two step tasks in a low stress job having relaxed or flexible production rate requirements.  (R. 25.)  The Seventh Circuit has previously held that even a reasoning score of three was commensurate with an RFC limiting a claimant to "simple" work.  *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009).  The ALJ properly relied on the VE, who testified that the RFC was consistent with these three jobs.

Claimant also asserts that his math comprehension was at a first grade level, yet the ALJ found Claimant could perform jobs that the DOT labels as requiring a math level one.  However, the DOT does not have a lower mathematical development level than 1. *DOT,* Appendix C, Section III.  The VE properly suggested jobs at the lowest mathematical level for Claimant based on the ALJ's hypothetical and the ME's testimony.  Moreover, "DOT definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range."

*Wheeler v. Apfel*, 224 F.3d 891, 897 (8th Cir. 2000) (quotation omitted); *see also Warf v. Shalala*, 844 F. Supp. 285, 289 (W.D. Va. 1994) ("The 'definitional requirements' for the jobs listed in the DOT are merely advisory in nature and serve only as a reference for the ALJ and VE."). The ALJ obtained expert testimony from the VE and properly relied on the testimony of the VE when he found jobs that exist in significant numbers that Claimant had the RFC to perform.

### 2. The VE Was Properly Informed of Claimant's Impairments and Limitations.

Claimant next contends that the ALJ failed to develop the record with regards to the hypothetical given to the VE. Claimant asserts that the VE was not informed of Claimant's phonological disorder or his requirements of a flexible work pace. However, the ME testified as to Claimant's phonological disorder and suggested no sustained verbal contact with the public, which the ALJ included in the RFC. (R. 25, 104.) As a general rule, the ALJ's RFC and the hypothetical posed to the VE must include all of Claimant's limitations as supported by the medical record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). However, there is an exception when the record indicates that the VE "independently learned of the limitations (through other questioning at the hearing or outside review of the medical records, for example) and presumably accounted for them." *Steele*, 290 F.3d at 942. Here, the ALJ asked the VE if she had reviewed the exhibits and listened to the testimony, to which she replied "yes." (R. 105.) The ME specifically testified regarding Claimant's phonological impairments and suggested that sustained verbal contact might frustrate both Claimant and the general public, but that Claimant could certainly still retain close proximity to the public. (R. 104.) Moreover,

16

the ME testified that Claimant did not require limitations regarding communication or interaction with coworkers. (*Id.*)

With regards to Claimant's need for a flexible work pace, the ME also testified that Claimant could handle end-of-day goals but could not handle fast-paced production requirements. (*Id.*) As such, the VE was apprised of Claimant's limitations, and the ALJ was not required to specifically note either issue when he incorporated those limitations in the RFC. The VE listened to the testimony of a medical expert who "effectively translated an opinion regarding the claimant's mental limitations into an RFC assessment." *Milliken v. Astrue,* 397 Fed. Appx. 218, 221 (7th Cir. 2010). Therefore, we find that the ALJ did not fail to develop the record, as he questioned the ME regarding Claimant's limitations and then included those limitations in his hypothetical to the VE.

## F. The ALJ Properly Evaluated Plaintiff's Subjective Allegations.

Finally, Claimant argues that the ALJ erred in finding Claimant's subjective complaints "not entirely credible," but later found that they were "generally credible, to the extent they were supported by the evidence in the record." (R. 26.) Claimant contends that the ALJ failed to explain which evidence was supported by the other evidence in the record, and which of Claimant's subjective allegations were not entirely credible. Claimant specifically points to the testimony of his aunt, Claimant's claim of difficulty using his hands, and Claimant's inability to manage funds as areas the ALJ failed to discuss.

The courts give ALJ's assessment of subjective allegations deference based on the ALJ's ability to hear, see, and assess witnesses. *Shideler v. Astrue*, 688 F.3d 306,

311 (7th Cir. 2012.) An ALJ's analysis of Claimant's subjective allegations will only be overturned if it is patently wrong. *Elder v. Astrue,* 529 F.3d 408, 413-14 (7th Cir. 2008.) The ALJ must "explain [his] decision in such a way that allows us to determine whether she reached her decision in a rational manner, logically based on [his] specific findings and the evidence in the record." *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011.)

The ALJ is obligated to consider all relevant medical evidence and may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding. *Goble v. Astrue*, 385 Fed. Appx 588, 593 (7th Cir. 2010). However, the ALJ need not mention every piece of evidence so long as he builds a logical bridge from the evidence to his conclusion. *Id.* In making a subjective complaint determination, the ALJ "may not disregard subjective complaints merely because they are not fully supported by objective medical evidence." *Knight v Chater,* 55 F.3d 309, 314 (7th Cir. 1995).

Here, the ALJ properly considered Claimant's daily activities, the fact that he is not currently taking any medications, and his school history, as well as the opinions of the consultative examiners and the medical expert in determining that Claimant was not fully credible. (R. 23, 27, 28.) While the ALJ did not specifically discuss all of Claimant's subjective allegations, the ALJ need not mention every piece of evidence. *Goble*, 385 Fed. Appx. at 593. The ALJ discussed many of Claimant's allegations, including discussing evidence that the ALJ found to disprove Claimant's allegations of extreme isolation and anxiety. (R. 24-26, 27.) The ALJ properly noted Claimant's "reticence" to socialize but attributed it to his phonological impairment. (*Id.*) The ALJ also pointed to evidence that indicated Claimant was capable of interacting with others,

including the fact that he got along with family members and attended church weekly. (*Id.*)  While the ALJ did not specifically mention every one of Claimant's subjective allegations, he thoroughly analyzed Claimant's testimony and the aunt's testimony in light of the other evidence in the record and properly gave more weight to the educational records, the consultative examinations, and the ME's testimony.  (R. 30.)

### III. Conclusion

For the foregoing reasons, Claimant's motion for summary judgment is denied, and the Commissioner's motion for summary judgment is granted.  It is so ordered.

**ENTERED:**

*Michael T. Mason*

**Michael T. Mason**
**United States Magistrate Judge**

**Dated: October 12, 2018**